# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

LORENZO BUDET, on behalf of
himself and all others similarly situated,

Plaintiff,

v.

RUTGERS BUSINESS SCHOOL,
RUTGERS, THE STATE
UNIVERSITY OF NEW JERSEY,

Defendants.

Civil Action No. 1:22-cv-02134
(GC)(LHG)

Motion Date:  August 1, 2022

*Document Filed Electronically*

---

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLANTIFF'S COMPLAINT

---

William F. Maderer, Esq.
(wmaderer@saiber.com)
DanaLynn T. Colao, Esq.
(dcolao@saiber.com)
Jeffrey Soos, Esq.
(jsoos@saiber.com)
Katherine A. Escanlar, Esq.
(kescanlar@saiber.com)
**SAIBER LLC**
18 Columbia Turnpike, Suite 200
Florham Park, New Jersey 07932
(973) 622-3333
*Attorneys for Defendants*

# **TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ..............................................................1

No Subject Matter Jurisdiction Under Rule 12(b)(1).............................1

Failure to State a Claim Under Rule 12(b)(6) ......................................2

STATEMENT OF FACTS ....................................................................4

ARGUMENT ....................................................................................8

    I.  APPLICABLE LEGAL STANDARDS....................................8

    A. *Subject Matter Jurisdiction* ......................................................8

    B. *Failure to State a Claim upon Which Relief can be Granted* ...................8

    II. PLAINTIFF LACKS STANDING TO ASSERT CLAIMS PREMISED ON A PROGRAM HE DOES NOT ATTEND ......................................10

    III. PLAINTIFF'S NEW JERSEY CONSUMER FRAUD ACT CLAIM FAILS AS A MATTER OF LAW AND SHOULD BE DISMISSED....12

    A. *Public Entities are not Subject to Liability under the NJCFA* ................13

    B. *Plaintiff's Alleged Damages are Speculative and Plaintiff Cannot Demonstrate Ascertainable Loss under the NJCFA* ...............................16

    C. *Defendants Are Exempt from the NJCFA under the "Learned Professionals" Doctrine* ........................................................................26

    IV. PLAINTIFF FAILS TO IDENTIFY ANY CONTRACTUAL PROVISION THAT WAS BREACHED BY RUTGERS.....................28

    V. PLAINTIFF'S UNJUST ENRICHMENT CLAIM IS DUPLICATIVE AND FAILS AS A MATTER OF LAW ..................................................33

i

CONCLUSION ...................................................................................................37

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................................8, 9, 21

*Barker v. Our Lady of Mount Carmel Sch.*,
  C.A. No. 12-4308 2016 U.S. Dist. LEXIS 118067 (D.N.J. Sept. 1,
  2016) .........................................................................................................................29

*Barry v. N.J. State Hwy. Auth.*,
  245 N.J. Super. 302 (Ch. Div.1990) ........................................................................14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................................8

*Bevelacqua v. Brooklyn Law Sch.*,
  975 N.Y.S.2d 365 (N.Y. Sup. Ct. Apr. 22, 2013)....................................................25

*Bradshaw v. Pa. State Univ.*,
  C.A. No. 10-4839, 2011 U.S. Dist. LEXIS 36988 (E.D. Pa. Apr. 5,
  2011) .........................................................................................................................35

*Cavuoti v. N.J. Transit Corp*,
  161 N.J. 107 (1999) ..................................................................................................15

*Chatman v. Hall*,
  128 N.J. 394 (1992) ..................................................................................................15

*Chong v. Northeastern Univ.*,
  494 F. Supp. 3d 24 (D. Mass. 2020)........................................................................34

*City of Pittsburgh v. West Penn Power Co.*,
  147 F.3d 256 (3d Cir. 1998) ......................................................................................8

*Daaleman v. Elizabethtown Gas Company*,
  77 N.J. 267 (1978) ...................................................................................................14

*David v. Neumann Univ.*,
    177 F. Supp. 3d 920 (E.D. Pa. 2016) ................................................................ 35

*Dougherty v. Drew Univ.*,
    534 F. Supp. 3d 363 (D.N.J. 2021) .................................................................... 26

*Eprotec Pres., Inc. v. Engineered Materials, Inc.*,
    C.A. No. 10-5097, 2011 U.S. Dist. LEXIS 24231 (D.N.J. Mar. 9,
    2011) ................................................................................................................... 29

*Fields v. Salem Cnty. Vocational Tech. Sch.*,
    Docket No. A-3511-14T1, 2017 N.J. Super. Unpub. LEXIS 117
    (App. Div. Jan. 19, 2017) .................................................................................... 14

*Fine v. Rutgers*,
    163 N.J. 464 (2000) ............................................................................................ 13

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) .................................................................................. 8

*Fuller v. Rutgers*,
    154 N.J. Super. 420 (App. Div. 1977) ................................................................ 13

*Gennari v. Weichert Co. Realtors*,
    148 N.J. 582 (1997) ............................................................................................ 17

*Gerber ex. rel. Gerber v. Springfield Bd. of. Educ.*,
    328 N.J. Super. 24 (App. Div. 2000) .................................................................. 15

*Gillis v. Principia Corp.*,
    832 F.3d 865 (8th Cir. 2016) .............................................................................. 32

*Gomez-Jimenez v. New York Law School*,
    943 N.Y.S.2d 834 (N.Y. Sup. Ct.), *aff'd,* 956 N.Y.S.2d 54 (N.Y.
    App. Div. 2012) ....................................................................................... 23, 24, 25

*Gourdine v. Felician College*,
    Docket No. A-5248-04T3, 2006 N.J. Super. Unpub. LEXIS 1792
    (App. Div. Aug. 15, 2006) ...................................................................... 26, 27, 28

*Gross v. Johnson & Johnson-Merck Consumer Pharms. Co.*,
    303 N.J. Super. 336 (Law Div. 1997) ................................................................ 16

*Haas v. Pittsburgh Nat'l Bank*,
    526 F.2d 1083 (3d Cir. 1975) ..............................................................10

*Hampton Hosp. v. Bresnan*,
    288 N.J. Super. 372 (App. Div.), *certif. denied*, 144 N.J. 588
    (1996)........................................................................................................14

*Harnish v. Widener Univ. Sch. of Law*,
    833 F.3d 298 (3d Cir. 2016) ............................................................3, 17, 18, 19

*Matter of Harris v. Dutchess Cnty. Bd. of Coop. Educ. Servs.*,
    25 N.Y.S.3d 527 (N.Y. Sup. Ct. 2015)..............................................19

*Hoffman v. Asseenontv.com, Inc.*,
    404 N.J. Super. 415 (App. Div. 2009)..............................................16

*Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck
    & Co.*,
    192 N.J. 372 (2007) ....................................................................16, 18

*Kaymark v. Bank of America, N.A.*,
    783 F.3d 168 (3d Cir. 2015) ..............................................................32

*Krebs v. Charlotte Sch. of Law, LLC*,
    C.A. No. 17-190, 2017 U.S. Dist. LEXIS 143060 (W.D.N.C. Sept.
    5, 2017) ......................................................................................36

*Lee v. First Union Nat'l Bank*,
    199 N.J. 251 (2009) ..........................................................................26

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)............................................................................8

*Magill v. Westinghouse Elec. Corp.*,
    464 F.2d 294 (3d Cir. 1972) ..............................................................32

*Myers v. Medford Lakes Bd. of Educ.*,
    199 N.J. Super. 511 (App. Div. 1985)................................................36

*N.J. Citizen Action v. Schering-Plough Corp.*,
    367 N.J. Super. 8 (App. Div. 2003)....................................................18

*Napolitano v. Princeton Univ. Trustees*,
    186 N.J. Super. 548 (App. Div. 1982) .................................................................30

*Neale v. Volvo Cars of N. Am., LLC*,
    794 F.3d 353 (3d Cir. 2015) ...............................................................................10

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
    998 F.2d 1192 (3d Cir.1993) .................................................................................4

*Petty v. Chrysler Corp.*,
    799 N.E.2d 432 (Ill. App. Ct. 2003) ...................................................................19

*In re Philips/Magnavox TV Litig.*,
    No. 09-3072 (PGS), 2010 U.S. Dist. LEXIS 91343 (D.N.J. Sept. 1,
    2010) .......................................................................................................................4

*Phillips v. DePaul University*,
    19 N.E.3d 1019 (Ill. App. Ct. 2014) .......................................................21, 22, 23

*Pollack v. Quick Quality Restaurants, Inc.*,
    452 N.J. Super. 174 (App. Div. 2017) .................................................................29

*Ramapo Brae Condo. Ass'n v. Bergen Cnty. Hous. Auth.*,
    328 N.J. Super. 561 (App. Div. 2000), *aff'd o.b.*, 167 N.J. 155
    (2001) .......................................................................................................13, 14, 15

*Ramirez v. STi Prepaid LLC*,
    644 F. Supp. 2d 496 (D.N.J. 2009) .....................................................................10

*Ribble Co. v. Burkert Fluid Control Sys.*,
    C.A. No. 15-6173, 2016 U.S. Dist. LEXIS 161746 (D.N.J. Nov.
    22, 2016) ...............................................................................................................33

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
    678 F.3d 235 (3d Cir. 2012) .................................................................................8

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
    873 F.3d 905 (Fed. Cir. 2017) ..............................................................................9

*Slimm v. Bank of Am. Corp.*,
    C.A. No. 12-5846, 2013 U.S. Dist. LEXIS 62849 (D.N.J. May 2,
    2013) .....................................................................................................................33

*Solomon v. Guardian Life Ins. Co. of Am.*,
    C.A. No. 96-1597, 1996 U.S. Dist. LEXIS 18342 (E.D. Pa. Dec.
    10, 1996) ...................................................................................................36

*Tessmar v. Grosner*,
    23 N.J. 193 (1957) .....................................................................................33

*TriPlay, Inc. v. WhatsApp Inc.*,
    No. 13-1703-LPS-CJB, 2018 U.S. Dist. LEXIS 49953 (D. Del.
    Mar. 27, 2018)........................................................................................9, 21

*VRG Corp. v. GKN Realty Corp.*,
    135 N.J. 539 (1994) ...................................................................................34

*Watiti v. Walden University*,
    C.A. No 07-4782 (JAP), 2008 U.S. Dist. LEXIS 43217 (D.N.J.
    May 30, 2008)........................................................................................27, 28

*Winslow v. Corp. Express, Inc.*,
    364 N.J. Super. 128 (App. Div. 2003) ......................................................34

**Statutes**

*N.J.S.A.* 10:5-5e.............................................................................................15

*N.J.S.A.* 56:8-1(d)..........................................................................................13

*N.J.S.A.* 56:8-2 ..............................................................................................12

*N.J.S.A.* 56:8-19 ............................................................................................16

*N.J.S.A.* 59:1-2 ..............................................................................................15

*N.J.S.A.* 59:2-1 ..............................................................................................15

*N.J.S.A.* 59:3-3 ..............................................................................................15

*N.J.S.A.* 59:9-2b ............................................................................................15

*N.J.S.A.* § 59:1-3 ...........................................................................................13

**Rules of Court**

Federal Rule of Civil Procedure 7.1 .........................................................1

Federal Rule of Civil Procedure 12(b)(1) ................................................................. 1, 8

Federal Rule of Civil Procedure 12(b)(6) ................................................................. 2, 8

Federal Rule of Civil Procedure 23(b)(3) ................................................................. 18

## PRELIMINARY STATEMENT

Plaintiff's Complaint – alleging claims under the New Jersey Consumer Fraud Act ("NJCFA"), breach of contract, and unjust enrichment – should be dismissed as a matter of law.  Plaintiff is currently enrolled as a part-time student in a Specialty Master's Program for Supply Chain Management at Rutgers University ("Rutgers") in the Rutgers Business School ("RBS") (collectively "Rutgers").[1]  Plaintiff's allegations against Rutgers are grounded in the purported false reporting in 2018 of employment outcomes for graduates of RBS's full-time Masters in Business Administration ("MBA") Program.  This, Plaintiff contends, resulted in the artificial inflation of RBS's rankings, as reported in certain publications like U.S. News & World Report, which in turn misled prospective students into applying to RBS for admission, and permitted RBS to charge a "premium tuition" to students once enrolled.  As argued in detail below, this matter should be dismissed in its entirety with prejudice because there is no factual, legal, or equitable basis for the claims asserted.

### No Subject Matter Jurisdiction Under Rule 12(b)(1)

As a threshold matter, Plaintiff lacks standing to prosecute his claims in this case.  The supposed false employment information and the institutional rankings

---

[1]     As set forth in Rutgers's Rule 7.1 Disclosure Statement, RBS is not a separate entity but is a constituent unit of Rutgers, The State University of New Jersey.

data and standards that Plaintiff points to in support of his claims relates specifically, and solely, to RBS's ***full-time MBA Program.***  Plaintiff is not, nor has he ever been, enrolled in RBS's full-time MBA Program.  Plaintiff's Complaint instead conflates RBS's ***full-time MBA Program*** with the various other Masters programs offered by RBS, such as part-time MBA and numerous Specialty Programs, each of which are separate and distinct from the other when it comes to, among other things, employment outcome reporting, the institutional rankings compiled by the different publications, and the tuition they charge to students. Plaintiff's Complaint is bereft of any well-pleaded facts – as opposed to bald assertions or unsupported conclusions – that the full-time MBA Program data, standards and rankings he points to in the Complaint are relevant or impactful to any of RBS's various other Master's programs – including the part-time Specialty Master's Program for Supply Chain Management he currently attends – or the costs of attending those programs.

### **Failure to State a Claim Under Rule 12(b)(6)**

Even if Plaintiff could meet the threshold standing requirement – (he cannot) – Plaintiff has still failed to state valid claims upon which relief can be granted:

***First,*** Plaintiff's NJCFA claim fails as a matter of law because it has long been the case in New Jersey that public entities, like Rutgers, are not subject to the NJCFA.

*Second*, controlling Third Circuit case law holds that Plaintiff's "inflated tuition" theory of damages is not cognizable in this Circuit (or under the NJCFA). *Harnish v. Widener Univ. Sch. of Law*, 833 F.3d 298 (3d Cir. 2016).  Here, Plaintiff claims that RBS's alleged conduct allowed it to charge a "premium tuition" to students.  This type of speculative damages claim, however, has been rejected by numerous courts, including *Harnish*.  Indeed, claims for a violation of the NJCFA, breach of contract and unjust enrichment *all* require that damages be ascertainable (and/or subject to reasonable calculation), not speculative, uncertain, hypothetical or remote.  The legal insufficiency of Plaintiff's damages theories is fatal to all of his claims, even assuming the truth of his factual allegations of wrongdoing by Rutgers.

*Third*, universities like Rutgers are considered "learned professionals" and, as such, are exempt from liability under the NJCFA.

*Finally,* Plaintiff's breach of contract and unjust enrichment claims also fail as a matter of law because: (i) nowhere does Plaintiff identify the contract that supposedly exists between Plaintiff and Rutgers or, more importantly, what specific provision(s) were breached; (ii) Plaintiff's unjust enrichment claim is duplicative of his breach of contract claim; and (iii) Plaintiff fails to plausibly identify the benefit he alleges was unjustly conferred on Rutgers.

For all the above reasons and the points and authorities stated herein, respectfully, Rutgers's Motion to Dismiss should be granted.

## <u>STATEMENT OF FACTS</u>

Plaintiff's Complaint contains three causes of action: (1) NJCFA (Compl. at ¶¶ 120-141); (2) Breach of Contract (Compl. at ¶¶ 142-157); and (3) Unjust Enrichment (Compl. at ¶¶ 158-167).  Plaintiff purports to bring these claims on behalf of himself and others similarly situated.  *See* Compl. at ¶¶ 106-119.

RBS offers, among other things, undergraduate, graduate, and doctoral programs at campuses in New Brunswick and Newark, New Jersey, with "off-campus" locations in Jersey City and Morristown, New Jersey, and Singapore.  *See* Compl. at ¶ 7, n.1 (citing "www.business.rutgers/edu/about-rbs/at-a-glance" (last visited June 13, 2022)); *see also id.* at ¶¶ 10 & 110 (same).[2]  The graduate programs at RBS include:

(i)      a full-time MBA Program;

(ii)     a part-time MBA;

---

[2]      Because Plaintiff relies on the statements and documents on the websites of Rutgers, U.S. News & World Report, and the MBA CSEA to form the basis of his claims, the Court may look to the content of those websites on a motion to dismiss. *In re Philips/Magnavox TV Litig.*, No. 09-3072 (PGS), 2010 U.S. Dist. LEXIS 91343, at *15 n.4 (D.N.J. Sept. 1, 2010); *see also Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196-97 (3d Cir.1993) ("When a complaint relies on a document . . . the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished.").

(iii)    an Executive MBA; and

(iv)    a host of Specialty Master's Programs in the following areas of

concentration: Accounting (Financial, Governmental, Professional); Taxation;

Business of Fashion; Digital Marketing; Financial Analysis; Healthcare Analytics

and Intelligence; Information Technology and Analytics; Quantitative Finance;

Supply Chain Analytics; and Supply Chain Management.  *Id.*

Plaintiff is currently enrolled as a part-time student at RBS in its Specialty

Master's Program for Supply Chain Management.  *See* Compl. at ¶ 6 (emphasis

added).  Plaintiff started at RBS in September 2019, and expects to graduate in

May 2023.  *Id.*  Plaintiff's allegations in this case relate to RBS's reporting of

employment outcome data to publications (*e.g.,* U.S. News & World Report) that

collect such data and publish rankings of Business/Graduate Schools and the

various programs they offer.  *Id.* at ¶¶ 2, 25-34.

Publications like U.S News & World Report – which Plaintiff cites to and

relies upon heavily throughout his Complaint – periodically survey educational

institutions with master's-level business programs, to collect data which they

utilize to rank the various institutions and the degree conferring programs they

offer.  *See* Compl. at ¶ 25 (citing "www.usnews.com/education/best-graduate-

schools" (last visited June 13, 2022)); ¶ 34, n.3 (citing "www.usnews.com/

education/best-graduate-schools/articles/business-schools-methodology" (last

visited June 13, 2022)); *see also* ¶¶ 26-33 (discussing U.S. News & World Report reporting and ranking).  These publications produce separate, standalone rankings for: (i) full-time MBA programs, (ii) part-time MBA programs, and (iii) various MBA Specialty Programs, including supply chain/logistics management.  *Id.*[3]

Plaintiff alleges that RBS "schemed to hire graduating MBA students who had not secured employment by the time of graduation so as to inflate its rankings."  *Id.* at ¶ 15.  Plaintiff further alleges that this scheme led RBS's students to pay a "premium tuition," and that Plaintiff (and the Class members he seeks to represent) "would not have enrolled [in RBS] and paid this premium but for [RBS's] deceit."  *Id.* at ¶ 3; *see also, id.* at ¶ 136 ("But for [RBS's] deceptive reporting of admissions data that increased its rankings, Plaintiff and Class members would not have enrolled at [RBS] and paid its premium tuition and fees.").

The facts that Plaintiff points to in support of this alleged "scheme," however, relate exclusively to employment outcome data from a single calendar

---

[3]    For example, "U.S. News produced 13 standalone rankings of popular specialties. ... The ranked MBA specialties are the following: accounting, business analytics, entrepreneurship, finance, information systems, international business, management, marketing, nonprofit management, production/operations, project management, real estate, and supply chain/logistics management."  *See* Compl. at ¶ 34, n.3 (citing "www.usnews.com/education/best-graduate-schools/articles/business-schools-methodology" (last visited June 13, 2022)).

year – 2018 – and concern **only** graduates from RBS's **full-time MBA Program** – as opposed to the program for which he was matriculating:

- Compl. at ¶¶ 21 & 111 – "www.business.rutgers.edu/sites/default/files/documents/**factsheet-mba-full-time.pdf**" – providing information only about RBS's full-time MBA program.

- Compl. at ¶ 26 – "U.S. News Best Business School rankings compare **full-time MBA programs** on their career placement success …"

- Compl. at ¶ 34 – "U.S. News ranked 134 business schools that provided enough data on their **full-time MBA programs** …"

- Compl. at ¶¶ 36-45 – citing MBA CSEA Standards for **Full-Time MBA Programs**.[4]

- Compl. at ¶¶ 53-88 & 97 – each of the six (6) students referenced in these paragraphs (*i.e.,* students "A" through "F") graduated from the **full-time MBA Program** and their employment outcomes are alleged to have been reported in connection with the **full-time MBA Program.**

- Compl. at ¶ 96 – "www.business.rutgers.edu/**full-time-mba**"

The foregoing facts, which are drawn directly from Plaintiff's Complaint and the documents/information cited therein, together with the case law and authorities discussed below, compel dismissal of each claim pled in the Complaint.

---

[4]      MBA Career Services & Employer Alliance ("CSEA") is a member organization – and Rutgers is a member—that publishes Standards for Reporting Employment Statistics "to `ensure peer schools, prospective students and the media have accurate and comparable employment information from graduate business schools.'"  *See* Compl. at ¶ 36.

## ARGUMENT

### I.   APPLICABLE LEGAL STANDARDS

#### A.   *Subject Matter Jurisdiction*

A court must grant a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) if it lacks subject matter jurisdiction to hear a claim.  *See In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). "The question of standing is a threshold inquiry in all actions." *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 264 (3d Cir. 1998).  Standing "is an essential and unchanging part of the case-or-controversy requirement of Article III" and at an "irreducible constitutional minimum" requires (1) an "injury in fact[;]" (2) "a causal connection between the injury and the conduct complained of[;]" and (3) a likelihood that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  Plaintiff's lack of standing, as shown below, means this Court lacks subject matter jurisdiction to hear Plaintiff's claims and/or grant him any of the relief he seeks.

#### B.   *Failure to State a Claim upon Which Relief can be Granted*

Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC*

*Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  This plausibility standard obligates a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.  Instead, the pleadings must provide sufficient factual allegations to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 506 U.S. at 678.  "[A] court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (internal quotations omitted).  Nor is the Court required to accept as true bald assertions, unsupported conclusions or unwarranted inferences. *See TriPlay, Inc. v. WhatsApp Inc.*, No. 13-1703-LPS-CJB, 2018 U.S. Dist. LEXIS 49953, at *8 (D. Del. Mar. 27, 2018).  Further, "[t]he plausibility standard is not akin to a 'probability requirement;'" the well-pleaded facts must do more than demonstrate that the conduct is "'merely consistent with' a defendant's liability" as to "permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 678-79.

Regardless of the varying labels Plaintiff has affixed to his allegations (NJCFA, breach of contract, unjust enrichment), the face of the Complaint (and the documents/information cited to or referenced in the Complaint), confirms that all of Plaintiff's claims are deficient and fail as a matter of law.

## II.   PLAINTIFF LACKS STANDING TO ASSERT CLAIMS PREMISED ON A PROGRAM HE DOES NOT ATTEND

"[C]lass representatives must meet Article III standing requirements the moment a complaint is filed." *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 367 (3d Cir. 2015) (citing *Lewis v. Casey*, 518 U.S. 343, 358, (1996)).  Generally, a "plaintiff may not maintain an action on behalf of a class against a specific defendant if the plaintiff is unable to assert an individual cause of action against that defendant." *Haas v. Pittsburgh Nat'l Bank*, 526 F.2d 1083, 1096 n.18 (3d Cir. 1975).  "If the named plaintiffs bringing a class action claims do not individually have standing to bring those claims, the case should be dismissed prior to the class certification process." *Ramirez v. STi Prepaid LLC*, 644 F. Supp. 2d 496, 504 (D.N.J. 2009).  The reason for this is straightforward: "a plaintiff who lacks the personalized, redressable injury required for standing to assert claims on his own behalf would also lack standing to assert similar claims on behalf of a class." *Id*. (quoting *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 135 (3d Cir. 2000)).

In this case, Plaintiff, a ***part-time*** student enrolled in a ***Specialty Master's Program for Supply Chain Management***, does not possess the same interest, nor would he have suffered the same alleged injury as students enrolled in, for example, the ***full-time MBA Program***.  As Plaintiff cedes, RBS has a variety of Masters Programs:  a full-time MBA Program; a part-time MBA program; and

10

various Specialty Masters in Business Programs, which includes the Supply Chain Management Program that he attends.  *See* ECF No. 1, Compl. at ¶ 7, n.1 (citing "www.business.rutgers/edu/about-rbs/at-a-glance" (last visited June 13, 2022)); *see also id.* at ¶¶ 10 & 110 (same).  Plaintiff's program is entirely separate from the full-time MBA Program from which the rankings data at issue in this case is obtained and reported.  In other words, the allegedly inflated employment data related only to full-time students in the school's full-time MBA degree granting program; it did not include data from RBS's Specialty Program to which Plaintiff applied and presently attends.

As also noted above, the full-time MBA, part-time MBA, and Specialty Programs are treated separately by the institutional rankings publications at issue. *See* Compl. at ¶ 34, n.3 (citing "www.usnews.com/ education/best-graduate-schools/articles/ business-schools-methodology" (last visited June 13, 2022)).  In addition, the MBA CSEA website cited by Plaintiff in the Complaint explains that there are different standards for Specialty Master's and Part-time MBA Programs: "[t]he growth of Specialty Master's and Part-time MBA programs indicated a need for separate sets of standards in order to meet the unique needs of those populations.  In 2017, the Standards for Reporting Part-time (Excluding Executive) MBA Employment Profile© and Standards for Reporting Specialty Masters Program Statistics© were created."  *Id.* at ¶ 37 (citing "www.mbacsea.org/

11

standards" (last visited June 13, 2022) for information on the various MBA CSEA reporting standards for full-time MBA, part-time MBA, and Specialty Master's Programs).  Plaintiff, however, cites only to the *full-time MBA Program* standards in his Complaint even though he does not, nor has he ever attended, the full-time MBA program at RBS.

Nowhere does Plaintiff plausibly allege how the supposedly false data related to the full-time MBA program is relevant to, for example, (i) the purchasing decisions of prospective students in other RBS programs; (ii) the setting and payment of tuition in other RBS programs; and/or (iii) the educational experience expected by or provided to students in other programs.  Nor, for that matter, has Plaintiff demonstrated – beyond generalized and conclusory assertions – a cognizable interest in, or that he suffered any actual injury caused by, supposedly false data reported to rankings publications concerning a program that Plaintiff, by his own admission, does not attend.  As a result, Plaintiff has failed to plead the facts necessary to establish standing to assert the claims pled in this matter, and his Complaint should be dismissed.

## III.   PLAINTIFF'S NEW JERSEY CONSUMER FRAUD ACT CLAIM FAILS AS A MATTER OF LAW AND SHOULD BE DISMISSED

Count One of Plaintiff's complaint alleges Rutgers violated the NJCFA, which prohibits a "person" from using fraud or deceptive practices in advertising or sales.  *N.J.S.A.* 56:8-2.  The NJCFA specifically defines a "person" as a "natural

person or his legal representative, partnership, corporation, company, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestuis que trustent thereof." *N.J.S.A.* 56:8-1(d).

### A.    Public Entities are not Subject to Liability under the NJCFA

Public entities, like Rutgers, are not subject to the NJCFA.  Judge Pressler's commentary to the New Jersey Court Rules succinctly states the rule on which New Jersey's public entities have relied: "Government agencies including local public entities are not subject to the [New Jersey Consumer Fraud] Act."  Pressler, *Current N.J. Court Rules*, comment 1.3.1(d) to *R. 4:5-8* (2007).  Rutgers is undeniably a public entity.  *See Fine v. Rutgers*, 163 N.J. 464, 468 (2000) (Rutgers a "public entity" to which Tort Claims Act applies); *Fuller v. Rutgers*, 154 N.J. Super. 420, 422 (App. Div. 1977) (same); *see also N.J.S.A.* § 59:1-3, 1972 Task Force Comment ("For the purposes of establishing liability in the State of New Jersey this definition is specifically intended to include such entities as the New Jersey Highway Authority and Turnpike Authority and Rutgers the State University").

In *Ramapo Brae Condo. Ass'n v. Bergen Cnty. Hous. Auth.*, 328 N.J. Super. 561, 575 (App. Div. 2000), *aff'd o.b.*, 167 N.J. 155, 157 (2001), the Appellate Division held, and the New Jersey Supreme Court subsequently affirmed, that a

county housing authority, as a public entity, is not subject to liability under the

NJCFA.  Importantly, "it would be contrary to the expressed policies of the Tort

Claims Act if we were to conclude that the Authority could be held responsible

under the [New Jersey] Consumer Fraud Act."  *Id.*; s*ee also Fields v. Salem Cnty.*

*Vocational Tech. Sch.*, Docket No. A-3511-14T1, 2017 N.J. Super. Unpub. LEXIS

117 *4 (App. Div. Jan. 19, 2017) ("Public entities have consistently been excluded

from the definition of 'person' under the CFA.") (citing cases).[5]

   In *Ramapo Brae*, the Appellate Division addressed the policy implications of

subjecting public entities to the NJCFA, determining that whereas taxpayers

benefit from allowing the government to sue under the NJCFA, they are harmed if

the government is exposed to the NJCFA's treble damages provision, especially

since "consumer fraud actions do not require a heightened standard of proof as is

necessary to obtain punitive damages" under other statutes, such as the Law

Against Discrimination ("LAD").  *Ramapo Brae, supra*, 328 N.J. Super. at 575.  In

---

[5]     *See also Hampton Hosp. v. Bresnan*, 288 N.J. Super. 372, 383 (App. Div.),
*certif. denied*, 144 N.J. 588 (1996) (hospital services not within purview of NJCFA
when those same services are regulated by State of Department of Health); *Barry
v. N.J. State Hwy. Auth.*, 245 N.J. Super. 302, 307-308 (Ch. Div.1990) (finding
NJCFA did not apply to Highway Authority because legislature did not intend Act
to apply to entity already supervised and regulated by agency of the State);
*Daaleman v. Elizabethtown Gas Company*, 77 N.J. 267 (1978) (finding NJCFA not
applicable to public utility).

affirming *Ramapo Brae, supra*, 167 N.J. at 157, the Supreme Court agreed with this conclusion.[6]

In addition, defining the boundaries of governmental liability is primarily a legislative, not a judicial, prerogative. *See N.J.S.A.* 59:2-1 (immunizing public entities against any injuries unless specifically authorized by the Tort Claims Act); *Chatman v. Hall*, 128 N.J. 394, 416 (1992).  Although the Legislature has expressly subjected public bodies to liability under other remedial statutes, such as the LAD, *N.J.S.A.* 10:5-5e, it did not do so with the NJCFA.  Since 2001, when the Supreme Court affirmed *Ramapo Brae, supra*, it has been clear that the judiciary considers public entities exempt from the NJCFA.  Nonetheless, the Legislature has not amended the statute to broaden its coverage to include public entities. Presumably, then, the Legislature agrees with the judicial view that the NJCFA was not intended to apply to public entities. *See Cavuoti v. N.J. Transit Corp*, 161 N.J. 107, 133-34 (1999) (per curium) ("[W]hen a statute has been judicially construed, the failure of the Legislature subsequently to act is evidence of

---

[6]     The Appellate Division in *Ramapo Brae* also determined that subjecting public entities to the NJCFA contravenes "the expressed policies of the Tort Claims Act," under which immunity is the rule and liability the exception. *Id.* at 575-76; *N.J.S.A.* 59:1-2; *Gerber ex. rel. Gerber v. Springfield Bd. of. Educ.*, 328 N.J. Super. 24, 34 (App. Div. 2000).  For example, a violation under the Act may trigger strict liability, and "[e]ven actions taken in good faith may subject the actor to liability for consumer fraud." *Ramapo Brae*, 328 N.J. Super. at 575.  Under the Tort Claims Act strict liability is barred, *N.J.S.A.* 59:9-2b, and a public employee cannot be held liable for enforcing the law in good faith. *N.J.S.A.* 59:3-3.

legislative acquiescence in the construction given to the statute.").

As a result of the foregoing, Plaintiff's claim under the NJCFA is barred as a matter of law, and a dismissal of that claim with prejudice is warranted.

> **B.     Plaintiff's Alleged Damages are Speculative and Plaintiff Cannot Demonstrate Ascertainable Loss under the NJCFA**

Even if Rutgers was subject to liability under NJCFA, which it is not, dismissal would nonetheless be warranted here because Plaintiff cannot demonstrate ascertainable loss.  A critical element of any claim brought under the NJCFA is proof of "ascertainable loss."[7]  By definition, an ascertainable loss must be quantifiable or measurable.  Either an out-of-pocket loss <u>or</u> a demonstration of a loss in value will suffice to meet the NJCFA's ascertainable loss requirement. *N.J.S.A.* 56:8-19; *Gross v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 303 N.J. Super. 336, 344-45 (Law Div. 1997); *see also Hoffman v. Asseenontv.com, Inc.*, 404 N.J. Super. 415, 418, 426-27 (App. Div. 2009) (when payment for product cancelled, and "reduced" credit line never impacted plaintiff, no

---

[7]  A *prima facie* NJCFA violation consists of the following three elements:

(1) unlawful conduct,
(2) an ascertainable loss, and
(3) a causal nexus between the unlawful conduct and ascertainable loss.

*See Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 389 (2007).

ascertainable loss). Ascertainable losses, however, are limited only to economic losses, *i.e.,* non-economic losses are not actionable. *See Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 612-13 (1997).

A number of courts have dismissed lawsuits against educational institutions that were premised on the schools' dissemination of allegedly false statistics touting the supposedly favorable employment rates and salaries of their graduates. Plaintiffs in those cases relied upon the same or similar theories and claims as those advanced here, such as the "inflated tuition" theory of damages alleged by Plaintiff. *See* Compl. at ¶ 3 (alleging students paid a "premium tuition"); ¶¶ 133, 136-137 (again alleging payment of "premium tuition and fees").[8]

Significant here is the Third Circuit's decision in *Harnish v. Widener Univ. School of Law*, 833 F.3d 298 (3d Cir. 2016). In *Harnish*, Plaintiffs alleged that Widener induced them to enroll by misrepresenting that 90-97% of its graduates were employed after graduation. *Id*. at 302. They claimed that these misleading statistics "enabled Widener to charge its students 'inflated' tuition - that is, higher tuition than what Widener would have received if full and accurate statistics were published instead." *Id*. Stated differently, "Widener's misrepresentations caused

---

[8]     In his Complaint, Plaintiff makes the vague assertion that he and the Class members "received an education less than and different from what they expected based on [RBS's] false statistics and rankings." *See* Compl. at ¶ 137. Nowhere in the Complaint, however, does plaintiff plead any facts to support this bald and conclusory allegation.

them to pay more for their education than it was truly worth." *Id*. at 309. They

sought damages "equal to the amount of tuition that students allegedly overpaid."

*Id*. at 302.

The Third Circuit affirmed the trial court's order denying class certification,[9]

and criticized plaintiffs' "inflated-tuition theory," noting that it "has been rejected

by the New Jersey and Delaware courts outside the federal securities fraud

context." *Id*. at 309. The Third Circuit characterized plaintiffs' "inflated-tuition

theory" as "non-cognizable." *Id*. It emphasized that "the ascertainable-loss and

causal-relationship elements of the NJCFA and the DCFA [Delaware Consumer

Fraud Act] are not met by the kind of price-inflation theory discussed above and

advanced by the plaintiffs." *Id*. at 312; *see also Int'l Union of Operating Eng'rs*

*Local No. 68 Welfare Fund,* 192 N.J. at 392 (rejecting plaintiff's attempt to utilize

"price inflation" as a "cause" of "ascertainable loss."); *N.J. Citizen Action v.*

*Schering-Plough Corp.*, 367 N.J. Super. 8, 16 (App. Div. 2003) (same).

Even though the "inflated-tuition theory" was found by the Third Circuit in

---

[9]      While the Third Circuit ruling in *Harnish* was rendered on an appeal of the
District Court's denial of class certification, the Court of Appeals made it clear that
the "inflated tuition" damages theory not only failed as applied to the Rule 23(b)(3)
predominance requirement, but also because it was deficient as a matter of law:
"[T]he plaintiffs fail to meet the predominance requirement of Rule 23 (b)(3)
because the only class-wide evidence of damages that they offer supports a non-
cognizable theory." 833 F.3d at 309.

*Harnish* to be "non-cognizable," Plaintiff here has nevertheless relied upon it in his Complaint.  He contends that RBS "intentionally reported false data and made misleading claims" which enabled it to charge "premiums for tuition," and he seeks to recover the alleged overpayment.  *See, e.g.,* Compl. at ¶ 3 ("students paid a premium tuition … [Plaintiff] paid this premium … tuition premiums"); ¶ 4 ("premium per credit rate of tuition"); ¶ 136 ("premium tuition and fees"); ¶ 137 ("paying a premium tuition"); ¶ 138 (seeking to recover "the incremental difference the tuition and fees [RBS] actually charged to Plaintiff and the amount of tuition and fees [Plaintiff and Class members] would have paid had they enrolled in other unranked or lower ranked programs").  However, that fundamentally flawed damages theory was rejected not only by the Third Circuit, but also by other Courts in decisions discussed below from Illinois and New York.[10]

For example, in *Petrizzo v. DeVry Educ. Group, Inc.*, the court dismissed a class action complaint that was based on allegedly false advertising by DeVry that

---

[10]    The consumer fraud statutes of Illinois and New York, like the NJCFA, do not allow for recovery of damages that are merely speculative. *See, e.g., Petty v. Chrysler Corp.*, 799 N.E.2d 432, 439 (Ill. App. Ct. 2003) (Illinois Consumer Fraud Act requires "actual damages," which "may not be predicated on mere speculation"); *Matter of Harris v. Dutchess Cnty. Bd. of Coop. Educ. Servs.*, 25 N.Y.S.3d 527, 543 (N.Y. Sup. Ct. 2015) (dismissing claim under New York Consumer Fraud Statute, which requires "actual injury," court held that plaintiffs' claims of "lost or diminished employment opportunities" were speculative).

90% of its graduates obtained new jobs in their fields of study within six months of graduation.  C.A. No. 16-cv-9754, 2018 U.S. Dist. LEXIS 22358, at *5, 19-20 (N.D. Ill. Feb. 12, 2018).  Plaintiffs alleged that they relied on these advertisements when deciding to enroll in DeVry, and were unable to find jobs in their fields of study within six months of graduation. *Id.* at *7.  Plaintiffs asserted claims under the consumer fraud statutes of Illinois and other states, as well as a claim for unjust enrichment.

Plaintiffs proposed a theory of damages based on the difference between what they actually paid and what they would have paid, if anything, had they known the true facts.  Their complaint alleged that they would have either paid less money or would not have enrolled at all, had they known the truth behind the advertised employment statistics.  *Id*. at *14.  However, the court found this damages theory to be speculative to a fault, holding as follows:

> [I]t would seem that the difference between the true value [of the DeVry degree] and the inflated value can only be based on speculative post-graduate career prospects and earning potential. Plaintiffs do not allege that any particular facet of the quality of their education or the degree they received was inadequate, or that they were promised a certain employment outcome…. A consumer-fraud complaint need not allege a precise damages amount or a fully-developed mathematical model for calculating damages. But it needs to allege facts sufficient to show that plaintiffs suffered actual, measurable, non-speculative damages. The complaint here falls short.

*Id*. at *17.  Plaintiff here relies upon the exact same flawed inflated tuition theory that was properly rejected by the court in *Petrizzo*.  *See, e.g.,* Compl. at ¶ 3; Compl.

at Count One (¶¶ 120-141).

Like *Petrizzo*, Plaintiff here does not plausibly allege that his business school education at RBS "was inadequate, or that [he was] promised a certain employment outcome" if he enrolled in RBS's part-time Specialty Master's Program. *Petrizzo*, 2018 U.S. Dist. LEXIS 22358, at *17. Instead, Plaintiff merely asserts that he and Class members "received an education less than and different from what they expected," (Compl. at ¶ 137), an assertion so vague as to be practically meaningless. Plaintiff then alleges that he and Class members "would have paid [less] had they enrolled in other unranked or lower ranked programs." Compl. at ¶ 138. These are exactly the sort of vague and conclusory assertions that are contrary to Plaintiff's obligation under *Iqbal* – to provide sufficient factual allegations to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 506 U.S. at 708; *see also TriPlay, Inc.*, 2018 U.S. Dist. LEXIS 49953, at *8 (Court not required to accept as true bald assertions, unsupported conclusions or unwarranted inferences). Also, just as in *Petrizzo*, the Complaint "falls short" because the "true value" of the RBS degree and the "inflated value" "can only be based on speculative post-graduate career prospects and earning potential." 2018 U.S. Dist. LEXIS 22358, at *17.

The *Petrizzo* decision relied on several similar cases, one of which was *Phillips v. DePaul University*, 19 N.E.3d 1019 (Ill. App. Ct. 2014). In that case,

graduates of DePaul's law school brought a class action alleging that they enrolled based on misleading employment and salary statistics concerning recent graduates transmitted by DePaul to U.S. News & World Report, the ABA, and the National Association for Law Placement. *Id*. at 1025. Plaintiffs alleged claims under the Illinois Consumer Fraud and Deceptive Business Practices Act and for common law fraud and negligent misrepresentation.

In *Phillips,* plaintiffs claimed damages based on the difference between what they paid in tuition to DePaul in reliance on the allegedly overstated employment and salary statistics for recent graduates and "what they should have paid in tuition based on the 'true' value of a DePaul degree." *Id*. at 1034. The court held that plaintiffs "failed to plead any reliable mechanism for calculating the 'true' value of their law degrees because of the alleged misrepresentation." *Id.*

The trial court dismissed the complaint because plaintiffs' damages theory, which was "based on their post- graduate jobs and incomes" (*id*. at 1032), was too speculative. That ruling was affirmed on appeal. The Court of Appeals agreed with the trial court that "a law school graduate's success in obtaining the job and lifetime salary he/she desires is the result of a multitude of factors." *Id.* at 1033. Moreover, "[g]iven the myriad factors that go into a successful job search and career earnings," it cannot be established that, but for the allegedly misleading statistics, the plaintiffs "would have obtained their desired jobs/salaries even upon

graduation from different law schools." *Id*.

The Court of Appeals emphasized in *Phillips* that "[t]o sufficiently plead a cause of action under the [Illinois] Consumer Fraud Act, plaintiffs must plead actual damages. *Damages may not be predicated on mere speculation, hypothesis, conjecture or whim*." *Id*. at 1034 (citation omitted) (emphasis added). The Court agreed with the trial court that in light of the numerous factors impacting an attorney's ability to obtain a particular job and salary, "[n]one of these factors can be determined with any kind of certainty and, therefore, the amount of damages, if any, sustained by [p]laintiffs is wholly speculative." *Id*. at 1035.

In addition, and also instructive, was the *Phillips* Court's recognition that "the employment statistics listed in the employment information for the 2005, 2007, and 2009 classes were only generalized, historical averages *for the members of those particular classes*, and they did *not* explicitly promise or project that those averages would be the same for individuals (such as plaintiffs) graduating years later." *Id*. at 1034 (emphasis in the original). Nowhere does Plaintiff here allege in his Complaint – nor could he – that Rutgers explicitly promised or projected that the 2018 full-time MBA program employment outcome data or rankings would be the same for individuals like Plaintiff – graduating years later (and from a separate, part-time Specialty Master's Program).

Also on point is the decision in *Gomez-Jimenez v. New York Law School,*

943 N.Y.S.2d 834 (N.Y. Sup. Ct.), *aff'd,* 956 N.Y.S.2d 54 (N.Y. App. Div. 2012).

Plaintiffs' class action alleged violations of the New York Consumer Fraud statute

(General Business Law §349) and common law fraud and misrepresentation based

on New York Law School's dissemination of allegedly misleading and deceptive

statistics concerning recent graduates' employment rates and salaries.  *Id.* at 837.

Plaintiffs alleged that the inflated statistics induced them to enroll at New York

Law School because obtaining a degree there meant that a "high paying, full-time,

permanent job was highly likely."  *Id*. at 837, 847.  Just as in this case, "plaintiffs'

sole objection to the degrees they earned at NYLS is purely in employment terms"

and "plaintiffs do not challenge the quality of the education they received."  *Id*. at

844, 847.

Similar to the Complaint in this case was the plaintiffs' allegation that, had

they been aware that the published information concerning the employment and

salaries of New York Law School graduates was false, they would have elected to

either "pay less to NYLS or perhaps not attend the school at all."  *Id.* at 848.  Their

argument was that "[t]his is a case about a product being mislabeled; and because

that product is mislabeled, the law school can charge a premium for it."  *Id.* at

849.[11]  They sought damages "equal to the difference between the alleged inflated

---

[11]    *See* Compl. at ¶ 136 (alleging that if Plaintiff and Class members had known
of the "deceptive reporting of admission data that increased its rankings," they
would not have enrolled at RBS "and paid its premium tuition and fees.").

tuition they paid because of the allegedly misleading statements and what they characterize as the 'true value' of a NYLS degree." *Id.* at 837.

Plaintiffs not only sought restitution and disgorgement of all tuition payments, but also "consequential costs," such as interest on loans, books, traveling and housing expenses. Id. at 847. The court held that plaintiffs were asking it to engage in "impermissible speculation" concerning their damages and concluded as follows:

> To measure damages based on the difference in value between a degree which guarantees a good legal job, as defined by plaintiffs, and one that does not … would require the court to engage in naked speculation. This the court cannot do.

*Id*. at 849, 851. *See also id.* at 857 ("plaintiffs' theory of damages, that is, an award of the difference between what they paid for their law degree and an amount representing its ostensibly lesser intrinsic worth because the degree has not sufficed as an entrance ticket for the type of jobs plaintiffs hoped to obtain, is entirely too speculative and remote to be quantified as a remedy under the law."). *Accord Bevelacqua v. Brooklyn Law Sch.*, 975 N.Y.S.2d 365 n.13 (N.Y. Sup. Ct. Apr. 22, 2013) (dismissing class action based on Brooklyn Law School's dissemination of allegedly misleading employment and salary information of recent graduates to U.S. News & World Report and ABA; plaintiffs' damages theory, which sought damages based on the difference between the "inflated tuition" paid in reliance upon Brooklyn Law School's alleged misrepresentations

and the "true value" of a Brooklyn Law School degree, necessitated "improper speculation, requiring dismissal of the claims.").

In sum, Plaintiff's damages theory in this case relies on pure speculation and conjecture, and is plainly insufficient to constitute "ascertainable loss" under the NJCFA.  Consistent with the above referenced cases, Plaintiff's NJCFA claim should be dismissed with prejudice.

C.    **Defendants Are Exempt from the NJCFA under the "Learned Professionals" Doctrine**

Plaintiff's claim under the NJCFA also fails as a matter of law, because the NJCFA does not apply to "learned professionals" and both state and federal courts have held that universities are "learned professionals" exempt from NJCFA liability.  The "learned professionals" exception "is a judicially crafted rule, whereby certain transactions fall outside the CFA's purview because they involve services provided by learned professionals in their professional capacity."  *Lee v. First Union Nat'l Bank*, 199 N.J. 251, 263-64 (2009) (citing *Macedo v. Dello Russo*, 178 N.J. 340, 346 (2004)).

In *Gourdine v. Felician College*, Docket No. A-5248-04T3, 2006 N.J. Super. Unpub. LEXIS 1792 (App. Div. Aug. 15, 2006),[12] nursing students filed a

---

[12]    While federal courts are not bound to follow state trial court or unpublished appellate decisions, they may still be given "due regard" by the Court.  *Dougherty v. Drew Univ.*, 534 F. Supp. 3d 363, 375 n.4 (D.N.J. 2021).

complaint against the college based, in part, on the NJCFA.  The plaintiffs had

received unsolicited materials from the college about an "Accelerated Masters"

program, and asserted that they relied on various written and oral representations,

made by college officials, in deciding to apply to the program.  *Id*. at *1-2.  Once

the plaintiffs enrolled, lack of interest in the program led to its format being

changed.  *Id*. at *3.  The plaintiffs also learned that they would not be eligible to

"sit" for the advanced test which they had allegedly been promised would be

available to them.  *Id*.

Regarding the NJCFA claim, the motion judge dismissed that count, finding

the NJCFA did not apply to the college.  *Id*. at *8.  On appeal, the Appellate

Division affirmed, finding that "[i]n light of the Supreme Court's most recent

decision regarding the relationship of [the NJCFA] to learned professionals who

act within their professional capacities, we discern no ground on which to reach

a different result than did the motion judge."  *Id*. at *19-20 (citing *Macedo*, 178

N.J. at 345-46).

This issue was again addressed in *Watiti v. Walden University*, C.A. No 07-

4782 (JAP), 2008 U.S. Dist. LEXIS 43217 (D.N.J. May 30, 2008), where the

district court was faced with the question of whether the NJCFA applied to a claim

by a former student.  There, Walden was a "distance learning" university that

offered many courses taught completely or partially online.  *Id*. at *1.  The plaintiff

alleged that promises were made to her by Walden that she would not be required to submit to testing on Saturdays, because, as a Seventh Day Adventist, plaintiff's religion prohibited her from any nonreligious activity on that day.  *Id*. at *3. Despite these alleged assurances, plaintiff was required by Walden to submit to Saturday testing and, when she refused, she was failed by one of Walden's professors.  *Id*.  That grade was allegedly overturned and the plaintiff was withdrawn from the course.  *Id*. at *3-4.  The plaintiff was made to wait an additional year before she could take the test again.  *Id*. at *3.  She alleged that this incident caused Walden to discriminate against her going forward, forcing her eventual withdrawal from the university.  *Id*. at *4.

In its defense, the university argued, among other things, that universities are "learned professionals" and, therefore, exempt from liability under the NJCFA. *Id*. at *45-46.  Citing to *Gourdine*, Judge Pisano held that "the parties do not dispute that Walden is an institution of higher learning.  As such, the Court [finds] the CFA to be inapplicable to the facts as pled, and, consequently, Plaintiff's claim under this statute fails."  *Id.* at *46.

Because Rutgers here is a "learned professional," Plaintiff's NJCFA fails as a matter of law and should be dismissed with prejudice.

## IV.    PLAINTIFF FAILS TO IDENTIFY ANY CONTRACTUAL PROVISION THAT WAS BREACHED BY RUTGERS

Count Two of Plaintiff's complaint alleges breach of contract.  To establish

a breach of contract claim, a plaintiff has the burden to prove by a preponderance of the evidence that "the parties entered into a contract, containing certain terms; plaintiffs performed what was required under the contract; defendant did not fulfill its obligation under the contract; and defendant's breach caused a loss to plaintiffs." *Pollack v. Quick Quality Restaurants, Inc.*, 452 N.J. Super. 174, 188 (App. Div. 2017) (citing *Globe Motor Co. v. Igdalev*, 225 N.J. Super. 469, 482 (2016)). "A plaintiff must identify the specific contract or provision that was allegedly breached." *Barker v. Our Lady of Mount Carmel Sch.*, C.A. No. 12-4308 2016 U.S. Dist. LEXIS 118067, at *46, (D.N.J. Sept. 1, 2016); *Eprotec Pres., Inc. v. Engineered Materials, Inc.*, C.A. No. 10-5097 (DRD), 2011 U.S. Dist. LEXIS 24231, at *23 (D.N.J. Mar. 9, 2011) ("Failure to allege the specific provisions of contracts breached is grounds for dismissal."). The fundamental weakness with Plaintiff's breach of contract claim is Plaintiff's failure to adequately "identify the specific contract or provision" that Defendants "allegedly breached" in this case.

Here, Plaintiff alleges that "[b]y the act of matriculation, together with payment of required fees, a contract between Plaintiff and Class members, on the one hand, and Defendants, on the other hand, was created, in addition to any enrollment contract that may have existed between Defendants and the Plaintiff." *See* Compl. at ¶ 143. Plaintiff then makes the conclusory assertion that "[t]he law recognizes that there is an educational contractual relationship between student and

29

college/university." *See* Compl. at ¶ 144.[13]  However, nowhere does Plaintiff point to or even plausibly identify any document or writing that supposedly memorializes the terms and/or conditions of this contractual relationship.  Nor, for that matter, does Plaintiff identify "the law" that supposedly "recognizes" this "educational contractual relationship," or what terms and/or conditions govern that contractual relationship.

Plaintiff next alleges—once again, without reference or citation to any document or writing—the following terms of the supposed contract:

> Plaintiff accepted Rutgers' offer to education leading to a degree and entered into an agreement to attend [RBS] in exchange for payment of agreed upon tuition and fees.

> Rutgers agreed to provide Plaintiff with the necessary course work, instruction and training, in a specified time frame, whereby Plaintiff would be eligible to earn certification for a degree upon successful completion of the required courses.

*See* Compl. at ¶¶ 145 & 146.

However, Plaintiff does not allege any breach of these asserted contractual

---

[13]    Courts in New Jersey, however, have warned against the rigid application of contract law to govern the student-university relationship.  *See, e.g., Napolitano v. Princeton Univ. Trustees*, 186 N.J. Super. 548, 566 (App. Div. 1982) (recognizing "[i]n those instances where courts have dealt with the relationship of a private university to its students in contractual terms, they have warned against a rigid application of the law of contracts to student disciplinary proceedings"); *Mittra v. Univ. of Med. & Dentistry of N.J.*, 316 N.J. Super. 83, 85 (App. Div. 1998) (New Jersey courts "hold that the relationship between the university and its students should not be analyzed in purely contractual terms.").

obligations, nor does he point to an identifiable contractual promise that Rutgers failed to honor.  Conspicuous by its absence from the Complaint is any allegation that Rutgers failed to provide – or that he has been prevented from receiving – the promised course work, instruction and training.  Nor does Plaintiff allege that his courses or faculty were substandard.  Likewise, Plaintiff's own Complaint shows that he is still enrolled in RBS's part-time Specialty Master's Program for Supply Chain Management (*see* Compl. at ¶ 6), but he does not contend there have been any issues with his eligibility "to earn certification for a degree upon successful completion of the required courses."  *Id.* at ¶ 146.

Instead, Plaintiff merely alleges Rutgers breached their supposed agreement by "misreporting data to educational ranking organizations."  *Id.* at ¶ 148. However, Plaintiff fails to identify any contract, let alone any contractual provision, that Rutgers breached that is directly (or even indirectly) related to the reporting of data to "educational ranking organizations."  Nor does Plaintiff even allege that Rutgers promised that certain institutional rankings by particular publications would be achieved and/or maintained by any of its programs, let alone the program in which Plaintiff is enrolled.  Likewise, Plaintiff does not allege that any promises or agreements were made by Rutgers regarding certain employment

outcomes for graduates of its programs.[14]  Indeed, Plaintiff fails completely to

allege any adverse consequences, or the loss of any potential job opportunity, as a

result of the alleged false reporting of the ***full-time MBA Program*** employment

outcome data he cites to in his Complaint.

In addition, Plaintiff did not enroll in RBS until September 2019.  *See*

Compl. at ¶ 6.  Yet the alleged breach by Rutgers—the "misreporting data to

educational ranking organizations"—occurred in 2018.  *Id.* at ¶¶ 49-88.  Here,

Plaintiff puts the proverbial "cart before the horse," alleging Rutgers breached a

contract by misreporting data to particular rankings publications in 2018, even

though no contract could have been formed between Plaintiff and Rutgers until

sometime in 2019, when Plaintiff actually enrolled in RBS.  Nowhere does

Plaintiff plead facts that would support breach of contract prior to its actual

formation.

Finally, Plaintiff's speculative and fundamentally flawed damages theory,

discussed in detail above, is also fatal to his breach of contract claim.  *Kaymark v.*

*Bank of America, N.A.*, 783 F.3d 168, 180-83 (3d Cir. 2015) (affirming dismissal

of, among other claims, breach of contract because plaintiff failed to plead non-

speculative damages)*; Magill v. Westinghouse Elec. Corp.*, 464 F.2d 294, 300 (3d

---

[14]    "Aspirational promises" on a university website "cannot form the basis of a
breach of contract claim."  *Gillis v. Principia Corp.*, 832 F.3d 865, 873 (8th Cir.
2016).

Cir. 1972) ("a claim for damages must be supported by a reasonable basis for calculation; mere guess or speculation is not enough.") (citation omitted); *see also Tessmar v. Grosner*, 23 N.J. 193, 203 (1957) (requiring that contract damages be measured "with some reasonable degree of certainty," and stating that where it is unclear whether damages have resulted there can be no recovery.).

For all of the foregoing reasons, Plaintiff's breach of contract claim should be dismissed.

## V.    PLAINTIFF'S UNJUST ENRICHMENT CLAIM IS DUPLICATIVE AND FAILS AS A MATTER OF LAW

Although New Jersey law recognizes a plaintiff may plead unjust enrichment in the alternative, when the unjust enrichment claim simply duplicates the breach of contract claim, as it does here, the claim should be dismissed.  *See Ribble Co. v. Burkert Fluid Control Sys.*, C.A. No. 15-6173, 2016 U.S. Dist. LEXIS 161746, at *13, (D.N.J. Nov. 22, 2016) (dismissing, on motion to dismiss, unjust enrichment claim "because it simply duplicates [a] breach of contract claim"); *Slimm v. Bank of Am. Corp.*, C.A. No. 12-5846, 2013 U.S. Dist. LEXIS 62849, at *87, (D.N.J. May 2, 2013) (recognizing a court can dismiss a claim that is duplicative of other claims in the complaint).  A plaintiff's pleading is what controls the analysis at the motion to dismiss stage *i.e.*, if plaintiff pleads the existence of an enforceable agreement, a "quasi-contract" claim like unjust enrichment cannot stand.  *Ribble Co.*, 2016 U.S. Dist. LEXIS 161746, at *13; *see*

*also Winslow v. Corp. Express, Inc.*, 364 N.J. Super. 128, 143 (App. Div. 2003)

(claim for unjust enrichment cannot lie where the parties' relationship is governed

by contract).

Here, Plaintiff's unjust enrichment claim expressly incorporates by reference

all of the preceding allegations, including those set forth in Plaintiff's breach of

contract claim.  *See* Compl. at ¶ 158.  Nowhere does the Complaint state that the

unjust enrichment claim has been pled in the alternative.  Moreover, Plaintiff's

pleading that his relationship with Rutgers is governed by a contract, precludes any

"alternative" claim for unjust enrichment.  *See, e.g., Chong v. Northeastern Univ.*,

494 F. Supp. 3d 24, 30 (D. Mass. 2020) ("[i]t is the availability of a remedy at law,

not the viability of that remedy, that prohibits a claim for unjust enrichment.").

Because Plaintiff's unjust enrichment claim simply duplicates his breach of

contract claim, and because Plaintiff also pleads the existence of an enforceable

agreement with Rutgers (*see* Compl. at ¶¶ 142-157), his unjust enrichment claim

should be dismissed.

Even if not duplicative of the contract claim, the unjust enrichment claim

fails as a matter of law and should be dismissed.  "To establish unjust enrichment,

a plaintiff must show both that defendant received a benefit and that retention of

that benefit without payment would be unjust."  *VRG Corp. v. GKN Realty Corp.*,

135 N.J. 539, 554 (1994).  "The unjust enrichment doctrine requires that plaintiff

show that it expected remuneration from the defendant at the time it performed or

conferred a benefit on defendant and that the failure of remuneration enriched

defendants beyond its contractual rights." *Id*.

Here, Plaintiff's unjust enrichment claim should be dismissed because none

of the allegations, even if deemed true, establish that RBS has been enriched

unjustly.  For example, Plaintiff does not plausibly allege that Rutgers unjustly

retained the benefit of his tuition and fees.  Plaintiff is currently enrolled in RBS

and receiving credit for courses successfully completed (Compl. at ¶ 6) and will

presumably receive his graduate degree when he completes his course of study,

which is what Rutgers agreed to confer when he enrolled in his particular program.

*Id.* at ¶ 146.  Rutgers's retention of the tuition and fees paid by Plaintiff to attend

classes and earn credits towards that degree is not "unjust."

District courts in the Third Circuit recognize there is no unjust enrichment

where a student attends class for which tuition is paid.  *See David v. Neumann

Univ.*, 177 F. Supp. 3d 920, 927 (E.D. Pa. 2016) (dismissing quantum meruit claim

because "Plaintiff fails to allege how it would be unconscionable for the University

to retain the tuition paid for classes that she attended."); *Bradshaw v. Pa. State

Univ.*, C.A. No. 10-4839, 2011 U.S. Dist. LEXIS 36988, *5, (E.D. Pa. Apr. 5,

2011) (dismissing unjust enrichment claim because there were no allegations that

"defendant failed to hold the classes for which she paid her tuition or that she was

prevented from attending such classes.").[15]  Because Plaintiff is attending courses and receiving credits, there can be no unjust enrichment.

Finally, plaintiff's speculative and fundamentally flawed damages theory, discussed above, is likewise fatal to his unjust enrichment claim.  *Solomon v. Guardian Life Ins. Co. of Am.*, C.A. No. 96-1597, 1996 U.S. Dist. LEXIS 18342, at *2-5 (E.D. Pa. Dec. 10, 1996) (dismissing breach of contract and unjust enrichment claims because plaintiff did not adequately plead damages).

Accordingly, Plaintiff's unjust enrichment claim should be dismissed.

---

[15]    *See also Krebs v. Charlotte Sch. of Law, LLC*, C.A. No. 17-190, 2017 U.S. Dist. LEXIS 143060, at *18 (W.D.N.C. Sept. 5, 2017) ("Payment of tuition and fees cannot be unjust if the students received the benefit for which they paid," and plaintiffs cannot define that "benefit" more exactingly than a general provision of an education because "[a]ny inquiry into the quality or value of the services provided in return for Plaintiffs' tuition and fees constitutes an impermissible foray into education malpractice."); *Myers v. Medford Lakes Bd. of Educ.*, 199 N.J. Super. 511, 514 (App. Div. 1985) ("Educational malpractice has not been approved as a theory of recovery in this state or elsewhere.").

## <u>CONCLUSION</u>

For the foregoing reasons, Rutgers respectfully requests that Plaintiff's Complaint be dismissed in its entirety. Moreover, because there are no facts that could be pled by Plaintiff to remedy the various deficiencies in his Complaint and the liability/damages theories pled therein, any effort to amend would be futile. Therefore, Rutgers respectfully submits that the dismissal be ***with prejudice.***

*Respectfully submitted,*

*s/ Jeffrey Soos*
William F. Maderer, Esq.
DanaLynn T. Colao, Esq.
Jeffrey Soos, Esq.
Katherine A. Escanlar, Esq.
**SAIBER LLC**
18 Columbia Turnpike, Suite 200
Florham Park, New Jersey 07932
(973) 622-3333
*Attorneys for Defendants*